IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:23-CR-335-D
No. 5:25-CV-440-D

| | | |
|---|---|---|
| EARL LAMONT TAYLOR, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | **ORDER** |
| | ) | |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Respondent. | ) | |

On July 23, 2025, Earl Lamont Taylor ("Taylor" or "defendant"), through counsel, moved under 28 U.S.C. § 2255 to vacate, set aside, or correct his convictions for wire fraud and aiding and abetting and bank fraud and aiding and abetting, and his 72-month sentence [D.E. 111]. That same day, Taylor filed a memorandum in support [D.E. 112]. On October 29, 2025, the United States moved to dismiss Taylor's section 2255 motion [D.E. 128] and filed a memorandum in support [D.E. 129]. On November 12, 2025, Taylor responded in opposition [D.E. 130]. On November 26, 2025, the United States replied [D.E. 131]. As explained below, the court grants the United States' motion to dismiss, dismisses Taylor's section 2255 motion, and denies a certificate of appealability.

I.

On November 25, 2024, with a written plea agreement, Taylor pleaded guilty to one count of wire fraud and aiding and abetting in violation of 18 U.S.C. §§ 1343 and 2 (count three), and one count of bank fraud and aiding and abetting in violation of 18 U.S.C. §§ 1344 and 2 (count five). See [D.E. 71, 76, 77, 108]; Rule 11 Tr. [D.E. 126] 1, 3; Sent. Tr. [D.E. 127]. Taylor pleaded

guilty as a jury deliberated on a 23-count superseding indictment charging him with various fraud and money laundering offenses arising from a COVID-19 fraud scheme. See Rule 11 Tr. at 1; [D.E. 44, 66, 67, 68, 69, 70].

During the weekend of November 23, 2024, and after Taylor's case was submitted to the jury, Taylor discussed plea negotiations with his counsel. See [D.E. 112-1] 1–3. On November 24, 2024, at 2:43 p.m., Taylor texted counsel a proposal which involved Taylor pleading guilty to one count, the government recommending "probation and no jail time," and eventual expungement of the conviction. Id. at 7. At 4:15 p.m., counsel responded to Taylor and informed him that there are no expungements in federal court, that he did not think the United States would agree to Taylor's proposal, and that counsel "may be able to get [the United States] to put the Pretrial deal back on the table." Id. at 8. Taylor rejected counsel's suggestion. See id. At 6:07 p.m., counsel spoke with Taylor for 31 minutes and told Taylor about a potential plea agreement involving a guilty plea to two counts and dismissal of 21 counts. See id. at 1. During the call about the plea offer, Taylor opined to counsel that if convicted on all counts at trial, Taylor could rely on leniency from the court. See id. at 1–2. Counsel did not agree and responded that he "think[s] the judge thinks you're guilty." Id. at 2. Counsel then told Taylor that Taylor "needed to really think about this [offer]." Id. (quotation omitted).

At 8:11 p.m., after the call ended, Taylor texted counsel and asked if the United States would agree to a guilty plea to one count "with half the sentencing guidelines." Id. at 8. Counsel told Taylor that the United States "will not do that." Id. At 9:18 p.m., counsel told Taylor that the United States requested an answer concerning the plea agreement by the end of the night "if you choose to accept it." Id. at 9. Taylor asked counsel to confirm that, based on counsel's observation of sentencing in related COVID-19 fraud cases, Taylor was "likely . . . to get the 30 months?" Id.

at 2, 10. When counsel opined 30 months' imprisonment as a likely sentence based on a predicted advisory guidelines range of 24 to 30 months' imprisonment, Taylor responded, "Then I have no choice I suppose." Id. at 2, 11. Taylor told counsel to accept the plea agreement. See id. at 3, 11–12.

At the Rule 11 hearing on Monday, November 25, 2024, Taylor and the court engaged in a comprehensive Rule 11 colloquy. See Rule 11 Tr. at 1–30. The court confirmed Taylor's competency to change his plea and his desire to plead guilty to counts three and five in the superseding indictment. See id. at 2–3. The court explained Taylor's trial rights. See id. at 3–5. Because the parties had been in trial all the prior week for charges in the superseding indictment, Taylor waived reading of the superseding indictment. See id. at 4–5. The court then summarized the 23 counts in the superseding indictment, including that count three charged wire fraud and aiding and abetting and that count five charged bank fraud and aiding and abetting. See id. at 5–6. Taylor stated that he understood the charges. See id. at 6. The court then discussed the penalties for each charge. The penalties on count three were up to 20 years' imprisonment, a fine up to $250,000, up to three years' supervised release, a $100 special assessment, and restitution. See id. at 7–8. The penalties on count five were up to 30 years' imprisonment, a fine up to $1,000,000, up to five years' supervised release, a $100 special assessment, and restitution. See id. at 9.

The court then read counts three and five in full to Taylor. See id. at 10–12. The reading included the allegation of aiding and abetting and alleged violations in count three of 18 U.S.C. §§ 1343 and 2(a) and in count five of 18 U.S.C. §§ 1344 and 2(a). See id. Taylor affirmed that he understood the charges and potential penalties. See id. at 11–12.

The court then explained the sentencing process. See id. at 12–13. The court explained that at the sentencing hearing it would resolve any objections to the presentence investigation

3

report ("PSR") and calculate an advisory guideline range. See id. The court would then consider any motion that might move that advisory range either up or down. See id. The court would then consider the arguments of defense counsel, Taylor's allocution, and the arguments of the Assistant United States Attorney. See id. at 13.

The court then discussed any estimated advisory guideline range or estimated sentence that Taylor may have received from his counsel or anyone else before his change of plea hearing. See id. at 13–14. The court advised Taylor that "even if your lawyer or anyone else has given you his best estimate of what he thinks the advisory guideline range will be, whether he thinks there will be a departure or variance motion, whether he thinks I'll grant or deny such a motion, or any prediction from your lawyer or anyone else as to your actual sentence, any prediction from anyone on any sentencing topic is not binding on the [c]ourt." Id. at 13. Taylor stated under oath that he understood these facts. See id. Taylor also stated under oath that he understood that if he pleaded guilty to counts three and five, then "under the sentencing laws of the United States, the [c]ourt would have the authority to impose the maximum penalty authorized by law as [his] sentence." Id.

The court asked Taylor whether "anyone made any promise to you or anyone else that's made you decide to plead guilty . . . ." Id. at 14. Taylor stated under oath that no one did. See id. The court also asked Taylor if anyone threatened or coerced him "in any way to plead guilty." Id. Taylor stated under oath that no one did. See id.

The court then reviewed the plea agreement with Taylor. See id. at 14–16. Taylor affirmed that he understood the plea agreement. See id. Taylor also affirmed that he had answered all the court's questions during the Rule 11 hearing truthfully. See id. at 18.

4

The court noted that it had already read the charges in counts three and five in full and incorporated that reading by reference. See id. at 18–21. Taylor then pleaded guilty to counts three and five and admitted that he committed the crimes charged in counts three and five. See id.[1]

The United States offered a factual basis for the guilty plea, including the four days of evidence presented during the trial. See id. at 21. The court then accepted Taylor's guilty plea and adjudged him guilty of committing counts three and five. See id. at 21–23.

Before sentencing, Taylor reviewed his PSR. See [D.E. 112-1] 3. The PSR described the charges Taylor pleaded guilty to as "Count 3: Wire Fraud and Aiding and Abetting" and "Count 5: Bank Fraud and Aiding and Abetting." Id.; see, e.g., PSR at ¶¶ 2, 4. Notwithstanding Taylor's sworn guilty plea to counts three and five (including aiding and abetting), Taylor now contends that he "never understood that" he "was pleading guilty to being an accomplice" and "did not agree to plead guilty to aiding and abetting." [D.E. 112-1] 3. Taylor communicated his confusion about aiding and abetting to his attorney and his mother. See id. at 3–4. Taylor did not move to withdraw his guilty plea. Cf. Fed. R. Crim. P. 11(d).

On June 16, 2025, the court held Taylor's sentencing hearing. See Sent. Tr. at 1–48; [D.E. 106]. At the sentencing hearing, the court accepted Taylor's plea agreement, adopted the facts set forth in the PSR, and resolved Taylor's and the government's objections to the PSR. See PSR [D.E. 95]; [D.E. 106]; Sent. Tr. at 3–26.[2] The court overruled Taylor's objections and sustained

---

[1] Taylor understood that counts three and five included an allegation of aiding and abetting as an alternative basis of liability. Three days before the change of plea hearing and with Taylor present, the court instructed the jury on aiding and abetting liability. See generally [D.E. 78].

[2] Before the sentencing hearing, Taylor objected to the PSR. See [D.E. 89] 1–3. If the court sustained Taylor's objections to the PSR, Taylor's advisory guideline range would have been 24 to 30 months' imprisonment. See id. at 2; PSR Add. 1–5.

5

the government's objections. See Sent. Tr. at 4–26. The court calculated Taylor's total offense level to be 27, his criminal history category to be I, and his advisory guidelines range to be 70 to 87 months' imprisonment. See id. at 25; PSR at ¶¶ 54–65, 67. After considering all relevant factors under 18 U.S.C. § 3553(a), the arguments of counsel, and Taylor's allocution, the court sentenced Taylor to 72 months' concurrent imprisonment on counts three and five. See Sent. Tr. at 41; [D.E. 106]; [D.E. 113] 1–3.

Taylor did not appeal his convictions or sentence. On July 23, 2025, Taylor moved under 28 U.S.C. § 2255 to vacate, set aside, or correct his convictions and sentence. See [D.E. 111, 112]. On October 29, 2025, the United States moved to dismiss Taylor's section 2255 motion. See [D.E. 128, 129]. On November 12, 2025, Taylor responded in opposition. See [D.E. 130]. On November 26, 2025, the United States replied. See [D.E. 131].

II.

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) for "failure to state a claim upon which relief can be granted" tests a petition's legal and factual sufficiency. Fed. R. Civ. P. 12(b)(6); see Ashcroft v. Iqbal, 556 U.S. 662, 677–78 (2009); Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555–63, 570 (2007); Coleman v. Md. Ct. of Appeals, 626 F.3d 187, 190 (4th Cir. 2010), aff'd, 566 U.S. 30 (2012); Giarratano v. Johnson, 521 F.3d 298, 302 (4th Cir. 2008); accord Erickson v. Pardus, 551 U.S. 89, 93–94 (2007) (per curiam). In considering a motion to dismiss, a court need not accept a petition's legal conclusions. See, e.g., Iqbal, 556 U.S. at 678. Similarly, a court "need not accept as true unwarranted inferences, unreasonable conclusions, or arguments." Giarratano, 521 F.3d at 302 (citation omitted); see Iqbal, 556 U.S. at 677–79. Moreover, a court may take judicial notice of public records without converting a motion to dismiss into a motion for

6

summary judgment. See, e.g., Fed. R. Evid. 201(d); Tellabs, Inc. v. Makor Issues & Rts., Ltd., 551 U.S. 308, 322 (2007); Philips v. Pitt Cnty. Mem'l Hosp., 572 F.3d 176, 180 (4th Cir. 2009).

In reviewing a section 2255 petition, the court is not limited to the petition itself. The court may consider "the files and records of the case." 28 U.S.C. § 2255(b); see United States v. Dyess, 730 F.3d 354, 359–60 (4th Cir. 2013); United States v. McGill, 11 F.3d 223, 225 (1st Cir. 1993). Likewise, a court may rely on its own familiarity with the case. See, e.g., Blackledge v. Allison, 431 U.S. 63, 74 n.4 (1977).

The "Sixth Amendment entitles criminal defendants to the effective assistance of counsel—that is, representation that does not fall below an objective standard of reasonableness in light of prevailing professional norms." Bobby v. Van Hook, 558 U.S. 4, 7 (2009) (per curiam) (cleaned up). The Sixth Amendment right to counsel extends to all critical stages of a criminal proceeding, including plea negotiations, trial, sentencing, and appeal. See, e.g., Lee v. United States, 582 U.S. 357, 363–65 (2017); Lafler v. Cooper, 566 U.S. 156, 164–65 (2012); Missouri v. Frye, 566 U.S. 134, 140 (2012); Glover v. United States, 531 U.S. 198, 203–04 (2001); Hill v. Lockhart, 474 U.S. 52, 57–60 (1985).

To state a claim of ineffective assistance of counsel in violation of the Sixth Amendment, Taylor must plausibly allege that his attorney's performance fell below an objective standard of reasonableness and that he suffered prejudice as a result. See Strickland v. Washington, 466 U.S. 668, 687–91 (1984). When determining whether counsel's representation was objectively unreasonable, a court must be "highly deferential" to counsel's performance and must attempt to "eliminate the distorting effects of hindsight." Id. at 689. Therefore, the "court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Id. As for performance, a party must show "that counsel made errors so serious that

7

counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." Id. at 687.

"Surmounting Strickland's high bar is never an easy task." Harrington v. Richter, 562 U.S. 86, 105 (2011) (citation omitted). "An ineffective-assistance claim can function as a way to escape rules of waiver and forfeiture and raise issues not presented at trial, and so the Strickland standard must be applied with scrupulous care, lest intrusive post-trial inquiry threaten the integrity of the very adversary process the right to counsel is meant to serve." Id. (cleaned up). The "standard for judging counsel's representation is a most deferential one." Id. "Unlike a later reviewing court, the attorney observed the relevant proceedings, knew of materials outside the record, and interacted with the client, with opposing counsel, and with the judge." Id. "It is all too tempting to second-guess counsel's assistance after conviction or adverse sentence. The question is whether an attorney's representation amounted to incompetence under prevailing professional norms, not whether it deviated from best practices or most common custom." Id. (cleaned up).

A person asserting an ineffective assistance of counsel claim also must show that counsel's deficient performance was prejudicial. See Strickland, 466 U.S. at 691–96. A person does so by showing that there is a "reasonable probability that, but for" the deficient performance, "the result of the proceeding would have been different." Id. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. The Supreme Court based this "additional 'prejudice' requirement" on the "conclusion that 'an error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment.'" Hill, 474 U.S. at 57 (quoting Strickland, 466 U.S. at 691).

In assessing prejudice, Strickland "asks whether it is 'reasonably likely' the result would have been different." Harrington, 562 U.S. at 111 (quoting Strickland, 466 U.S. at 696). Strickland

8

"does not require a showing that counsel's actions 'more likely than not altered the outcome,' but the difference between Strickland's prejudice standard and a more-probable-than-not standard is slight and matters 'only in the rarest case.'" Harrington, 562 U.S. at 111–12 (quoting Strickland, 466 U.S. at 693, 697). "The likelihood of a different result must be substantial, not just conceivable." Id. at 112 (citation omitted).

When a defendant pleads guilty and later attacks his guilty plea, "to satisfy the prejudice requirement, the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." Hill, 474 U.S. at 59 (quotations omitted); see Lee, 582 U.S. at 364–65. "[S]uch an individual 'must convince the court' that such a decision 'would have been rational under the circumstances.'" United States v. Fugit, 703 F.3d 248, 260 (4th Cir. 2012) (quoting Padilla v. Kentucky, 559 U.S. 356, 372 (2010)). "Surmounting Strickland's high bar is never an easy task, and the strong societal interest in finality has special force with respect to convictions based on guilty pleas." Lee, 582 U.S. at 368–69 (cleaned up).

"Requiring a showing of prejudice from defendants who seek to challenge the validity of their guilty pleas on the ground of ineffective assistance of counsel [serves] the fundamental interest in the finality of guilty pleas . . . ." Hill, 474 U.S. at 58 (quotations omitted). "Every inroad on the concept of finality undermines confidence in the integrity of our procedures; and, by increasing the volume of judicial work, inevitably delays and impairs the orderly administration of justice." Id. (citation omitted). "The impact is greatest when new grounds for setting aside guilty pleas are approved because the vast majority of criminal convictions result from such pleas." Id. (citation omitted).

"[I]f a defendant alleges that he has accepted a government plea offer based on the erroneous advice of counsel, but entered that plea only after the misadvice was corrected by the trial court at the Rule 11 hearing, then he will not be able to show the necessary causal link between counsel's error and his decision to plead guilty." United States v. Mayhew, 995 F.3d 171, 179–80 (4th Cir. 2021) (cleaned up); see United States v. Yelizarov, 140 F.4th 597, 604–05 (4th Cir. 2025), cert. denied, No. 25-5669, 2025 WL 2949651 (U.S. Oct. 20, 2025); United States v. Akande, 956 F.3d 257, 262–63 (4th Cir. 2020); United States v. Foster, 68 F.3d 86, 88 (4th Cir. 1995). "Generally, a court should dismiss a claim in a [section] 2255 motion that contradicts a petitioner's sworn statements made during a Rule 11 plea colloquy." Yelizarov, 140 F.4th at 605; see United States v. Lemaster, 403 F.3d 216, 219–22 (4th Cir. 2005).

### A.

Taylor argues that his trial counsel rendered ineffective assistance of counsel by (1) providing "objectively unreasonable advice" about Taylor's potential sentence; (2) "exerting improper pressure" on Taylor to plead guilty; and (3) "failing to ensure" that Taylor understood aiding and abetting liability. [D.E. 112] 6–10; see [D.E. 130] 2. Taylor also argues that he may obtain relief despite his sworn statements at the Rule 11 hearing because of "compelling, contemporaneous evidence" which, according to Taylor, shows that Taylor's sworn statements were the product of coercion. [D.E. 112] 11; see [D.E. 130] 5–6. The United States responds that Taylor fails to plausibly allege deficient performance and prejudice. See [D.E. 129] 7–19; [D.E. 131] 2–10.

### 1.

Taylor alleges that his counsel rendered ineffective assistance when counsel told Taylor that he likely faced a sentence of 30 months' imprisonment, and the court calculated Taylor's

10

advisory guideline range to be 70–87 months' imprisonment and sentenced Taylor to 72 months' imprisonment. See [D.E. 111] 4. Taylor argues that counsel's prediction was an "unreasonable assessment" of Taylor's potential sentence and that Taylor's guilty plea "was based squarely" on counsel's prediction. [D.E. 112] 7–8; see id. at 6; [D.E. 130] 6–7.

Counsel's prediction of a likely advisory guideline range different from Taylor's sentence does not plausibly suggest deficient performance. See, e.g., United States v. Martinez, 169 F.3d 1049, 1053–54 (7th Cir. 1999); United States v. Barnes, 83 F.3d 934, 940 (7th Cir. 1996); Knight v. United States, 37 F.3d 769, 775 (1st Cir. 1994); United States v. Gordon, 4 F.3d 1567, 1570 (10th Cir. 1993); United States v. Suris, 625 F. Supp. 3d 1040, 1048 (C.D. Cal. 2022); Perkins v. United States, No. 16-CV-288, 2017 WL 627393, at *3 (D.N.H. Feb. 14, 2017) (unpublished); cf. United States v. Mikalajunas, 186 F.3d 490, 493 (4th Cir. 1999) ("Counsel's failure to pursue a basis for appeal by reason of a mere miscalculation of the likelihood of success does not constitute constitutionally ineffective representation."). In opposition, Taylor relies on his 72-month sentence. But the Sixth Amendment guarantees effective assistance, not perfect performance. Counsel's failure to predict the future is not ineffective assistance. See, e.g., Harrington, 562 U.S. at 105; Martinez, 169 F.3d at 1053–54; Barnes, 83 F.3d at 940; Knight, 37 F.3d at 774–75; Gordon, 4 F.3d at 1570; Suris, 625 F. Supp. 3d at 1048; Perkins, 2017 WL 627393, at *4. Alternatively, as an independent basis for rejecting Taylor's claim, Taylor's sworn statements at the Rule 11 hearing defeat any argument that he decided to plead guilty based on counsel's prediction of his likely sentence as 30 months' imprisonment. See Blackledge, 431 U.S. at 74–75; United States v. Moussaoui, 591 F.3d 263, 300 (4th Cir. 2010); Lemaster, 403 F.3d at 221–23. Thus, Taylor fails to plausibly allege that his counsel was deficient.

11

Alternatively, even if Taylor plausibly alleged deficient performance, Taylor does not plausibly allege prejudice. At the Rule 11 hearing, Taylor stated under oath that he understood the court's description of the sentencing process, the nonbinding nature of any prediction he received from his attorney concerning the sentence likely to be imposed at a sentencing hearing, and that the court could impose any sentence up to the statutory maximum. See Rule 11 Tr. at 13; Yelizarov, 140 F.4th at 604–05; Foster, 68 F.3d at 88 (holding counsel's failure to inform defendant of possibility of career offender designation was cured by Rule 11 hearing); cf. Mayhew, 995 F.3d at 180 ("This is not a case . . . in which a defendant accepts a government plea offer and pleads guilty in accordance with that offer only after a Rule 11 colloquy during which he hears a district court's corrective admonitions and indicates his understanding of them."); [D.E. 112-1] 2 (Taylor's counsel, telling Taylor to "think about" pleading guilty); [D.E. 112-1] 10 (Taylor, asking his attorney whether he is "likely . . . to get the 30 months"). Taylor's statements at the Rule 11 hearing bind him and doom his claim.

Alternatively, Taylor also fails to plausibly allege prejudice because he fails to plausibly suggest that rejecting the plea agreement and opting for a jury verdict on 23 charges carrying a combined maximum statutory penalty of over 400 years' imprisonment "would have been rational under the circumstances." Fugit, 703 F.3d at 260 (citation omitted); see PSR at ¶ 68. Taylor's contemporaneous text messages show that Taylor desired to avoid facing the consequences of conviction on all charges against him. See [D.E. 112-1] 10 ("If they're not willing to recommend the low end then it seems like they wanna have the book thrown at me[.]"). While Taylor suggests that he pleaded guilty because he believed his sentence "would be" 30 months, Taylor's messages show he knew that counsel offered only a prediction. See id. at 2, 10 ("Ok so I'm likely . . . to get the 30 months?" (emphasis added)); see also Strickland, 466 U.S. at 691 ("The reasonableness of

12

counsel's actions may be determined or substantially influenced by the defendant's own statements or actions."). In any event, the inquiry is objective, not subjective, so Taylor's mistaken belief cannot save his claim. See, e.g., Fugit, 703 F.3d at 260. Thus, Taylor's claim based on counsel's prediction of a likely 30-month sentence fails.

2.

Taylor alleges that counsel coerced him into entering a plea agreement when counsel told him, "I think the judge thinks you're guilty." [D.E. 112-1] 1–2; see [D.E. 112] 8–9; [D.E. 130] 7–8. Taylor argues that counsel's statement, "combined with the low-ball sentence estimate, was coercive." [D.E. 130] 8; see id. at 7. Taylor's sworn statements at his Rule 11 hearing, however, defeat his coercion claim. See Rule 11 Tr. at 14; Blackledge, 431 U.S. at 74; Lemaster, 403 F.3d at 221–22; Restucci v. Spencer, 249 F. Supp. 2d 33, 45 (D. Mass. 2003) (collecting cases); Berkley v. United States, No. 1:18-CR-72, 2021 WL 1238578, at *5 (W.D.N.C. Apr. 2, 2021) (unpublished).

Alternatively, Taylor fails to plausibly allege ineffective assistance by coercion. Taylor states that he "felt immense pressure" and "duress" because of his attorney's advice. [D.E. 112-1] 2. But Taylor's contemporaneous evidence shows that Taylor weighed the risks and decided to plead guilty. Id. at 11. Counsel left the choice of pleading guilty to Taylor, and Taylor directed counsel to accept the plea agreement. See id.

Taylor "simply misunderstands the notion of coercion." Restucci, 249 F. Supp. 2d at 43. A guilty plea is not "compelled and invalid" because of "the defendant's desire to accept the certainty or probability of a lesser penalty rather than face a wider range of possibilities extending from acquittal to conviction and a higher penalty authorized by law for the crime charged." Brady v. United States, 397 U.S. 742, 751 (1970). The "undeniable and substantial pressures" Taylor

13

faced when deciding whether to plead guilty to two counts or to allow the jury to decide his fate on 23 counts are present in every criminal prosecution and do not plausibly suggest coercion. Restucci, 249 F. Supp. 2d at 44; see, e.g., Bordenkircher v. Hayes, 434 U.S. 357, 364 (1978); Brady, 397 U.S. at 751–54; United States v. Dunfee, 821 F.3d 120, 130–31 (1st Cir. 2016) (per curiam) ("Of course, there is a distinction between coercion and the offering of candid legal advice."); United States v. Chafin, 885 F.2d 866, at *2 (4th Cir. 1989) (per curiam) (unpublished table decision) ("[A] plea is not involuntary because counsel strongly urges the defendant to plead."). Accordingly, Taylor fails to plausibly allege deficient performance.

Alternatively, Taylor fails to plausibly allege prejudice. Taylor's sworn statements during the Rule 11 hearing "conclusively establish[]" that he voluntarily pleaded guilty. Lemaster, 403 F.3d at 222; see Rule 11 Tr. at 14–15; Yelizarov, 140 F.4th at 604–05; Foster, 68 F.3d at 88. Thus, Taylor's claim fails.

3.

Taylor argues that counsel was ineffective because Taylor did not understand that he was pleading guilty to aiding and abetting. See [D.E. 112] 9–10; [D.E. 130] 8–9. Taylor fails to plausibly allege deficient performance. Aiding and abetting "does not increase the penalty, is not an essential element of a charged offense, and does not need to be charged in an indictment. Therefore, there was no requirement for it to be specified in the plea agreement . . . ." McGowans v. United States, No. RDB-16-3104, 2019 WL 2359784, at *3 (D. Md. June 4, 2019) (unpublished) (citations omitted), aff'd in part, appeal dismissed in part, 785 F. App'x 133 (4th Cir. 2019) (per curiam) (unpublished); see United States v. Ashley, 606 F.3d 135, 143 (4th Cir. 2010); United States v. Rashwan, 328 F.3d 160, 165 (4th Cir. 2003). "[A]iding and abetting simply describes the way in which a defendant's conduct resulted in the violation of a particular law." Ashley, 606 F.3d

14

at 143. Stated differently, liability under 18 U.S.C. § 2(a) is an alternative theory of liability and "does not set forth an essential element of the offense with which the defendant is charged . . . ." Id. Aiding and abetting was not an element of the offenses Taylor committed. Thus, Taylor fails to plausibly allege deficient performance. See Strickland, 466 U.S. at 687 (a convicted defendant must show "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment").

Alternatively, Taylor does not plausibly allege prejudice. See id. Taylor does not plausibly suggest that he was unaware that counts three and five included the alternative theory of aiding and abetting liability. Cf. Blackledge, 431 U.S. at 74 n.4. At trial and in Taylor's presence, the court properly instructed the jury concerning aiding and abetting. See [D.E. 78] 38, 44–45, 55–56; [D.E. 70]. At the Rule 11 hearing and in Taylor's presence, the court explained the charges against Taylor and discussed aiding and abetting eight times. See Rule 11 Tr. at 6, 10, 11. Taylor stated under oath that he understood the charges against him in counts three and five and then pleaded guilty to counts three and five after hearing that the charges included an aiding and abetting theory. See id. at 10, 12; cf. Lemaster, 403 F.3d at 221–22. Furthermore, aiding and abetting did not affect Taylor's potential liability or Taylor's sentencing exposure. See McGowans, 2019 WL 2359784, at *4. At bottom, it would not have been "rational under the circumstances" for Taylor to decide not to plead guilty because he misunderstood the import of aiding and abetting as charged in counts three and five. Fugit, 703 F.3d at 260 (citation omitted); Padilla, 559 U.S. at 372. Taylor fails to plausibly allege prejudice. Thus, the court dismisses Taylor's claim concerning counsel's alleged failure to explain aiding and abetting liability.

B.

After reviewing the claims presented in Taylor's motion, the court finds that reasonable jurists would not find the treatment of Taylor's claims debatable or wrong, and that the claims do not deserve encouragement to proceed any further. Accordingly, the court denies a certificate of appealability. See 28 U.S.C. § 2253(c); Miller-El v. Cockrell, 537 U.S. 322, 336–38 (2003); Slack v. McDaniel, 529 U.S. 473, 484 (2000).

III.

In sum, the court GRANTS respondent's motion to dismiss [D.E. 128], DISMISSES petitioner's section 2255 motion to vacate, set aside, or correct his sentence under 28 U.S.C. § 2255 [D.E. 111], and DENIES a certificate of appealability.

SO ORDERED. This 20 day of January, 2026.

JAMES C. DEVER III
United States District Judge